USDC - BALTIMORE
'22 NOV 14 PM2:38

*MCH* KOG:USAO#2022R00436

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** :| |
| : | **CRIMINAL NO.** 22-cr-391-GJH |
| **v.** : | **(Conspiracy, 18 U.S.C. § 371;** |
| : | **Forfeiture, 18 U.S.C. § 981(a)(1)(C), 21** |
| **BEHROUZ MOKHTARI,** : | **U.S.C. § 853(p), 28 U.S.C. § 2461(c))** |
| : | |
| **Defendant.** : | |
| : | |
| : | |

...oOo...

### INFORMATION

The United States Attorney for the District of Maryland charges:

### General Allegations

At all times relevant to this Information:

### A.  Applicable Legal Provisions

1.      The International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1707, granted the President of the United States the authority to deal with unusual and extraordinary threats to the national security, foreign policy or economy of the United States. Pursuant to that authority, the President may declare a national emergency through Executive Orders that have the full force and effect of law. Among other things, IEEPA empowered the President to impose economic sanctions on a foreign country.

2.      On March 15, 1995, the President issued Executive Order 12,957, which found that the actions and policies of the Government of Iran (GOI) constituted an unusual and extraordinary threat and declared a national emergency under IEEPA to deal with that threat.  In

1

two subsequent Executive Orders in 1995 and 1997, the President imposed comprehensive sanctions on Iran and clarified the original declaration of a national emergency.  Since 1997, the President has continued the national emergency with respect to Iran and the 1995 and 1997 Executive Orders.

3.      To implement the sanctions, the Secretary of the Treasury, through the Office of Foreign Assets Control (OFAC), promulgated the Iranian Transactions and Sanctions Regulations (ITSR).

4.      Absent permission from OFAC in the form of a license, the ITSR prohibited, among other things, "the exportation, re-exportation, sale, or supply, directly or indirectly, from the United States, or by a U.S. person, wherever located, of any goods, technology, or services, to Iran … including the exportation, re-exportation, sale, or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that: (a) Such goods, technology, or services are intended specifically for supply, transshipment, or re-exportation, directly or indirectly, to Iran or the Government of Iran; or (b) Such goods, technology, or services are intended specifically for use in the production of, for comingling with, or for incorporation into goods, technology, or services to be directly or indirectly supplied, transshipped, or reexported exclusively or predominantly to Iran or the government of Iran."

5.      The ITSR also prohibited any transaction by any U.S. person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, or cause a violation of the ITSR.

6.      The ITSR further prohibited a United States person, wherever located, from engaging "in any transaction or dealing related to (1) goods or services of Iranian origin or owned or controlled by the Government of Iran; or (2) goods, technology, or services for

2

exportation, re-exportation, sale, or supply, directly or indirectly, to Iran or the Government of Iran."

### B. The Defendant and Relevant Entities

7.     **BEHROUZ MOKHTARI ("MOKHTARI")**, a native of Iran, became a naturalized United States citizen in about August 2008.

8.     Mori Construction and Development, LLC ("Mori Construction") was solely owned by **MOKHTARI.** The business address for Mori Construction was the same as the address for **MOKHTARI**'s personal residence in Virginia. **MOKHTARI** maintained a bank account with an account number ending in 1591 in the name of Mori Construction at Bank of America as well as another account in the name of Mori Construction with an account number ending in 4626 at Wells Fargo Bank.

9.     Russell Shipping, Inc. ("Russell Shipping") was an entity wholly owned by **MOKHTARI.**

### The Conspiracy

10.     Beginning in or before February 2013, and continuing until at least June 2017, **BEHROUZ MOKHTARI**, a number of Iranian nationals, and other individuals known and unknown to the United States Attorney did knowingly and unlawfully combine, conspire, confederate and agree to commit an offense against the United States, and to defraud the United States and an agency thereof, to wit: to violate, and to cause a violation of, licenses, orders, regulations, and prohibitions issued under the International Emergency Economic Powers Act, Title 50, United States Code, Sections 1701 to 1707 and Part 560 of Title 31, Code of Federal Regulations.

### Object of the Conspiracy

3

11.     The object of the conspiracy was to evade U.S. sanctions by engaging in business activities with and on behalf of Iranian entities without first obtaining required OFAC licenses, in violation of U.S. economic sanctions.

### Manner and Means of the Conspiracy

12.     It was part of the conspiracy that **MOKHTARI** and his co-conspirators created and used multiple entities to conceal their ownership and financial interests in two liquid petroleum gas ("LPG ") tanker vessels ("LPG Vessel 1" and "LPG Vessel 2").

13.     It was further part of the conspiracy that **MOKHTARI** and his co-conspirators used Entity 2 ("the management company") to oversee the operations of LPG Vessel 1 and LPG Vessel 2, which were used to transport Iranian petrochemical products in international commerce on behalf of, and for the benefit of, various Iranian entities that were associated with the Government of Iran.

14.     It was further part of the conspiracy that the conspirators used the U.S. financial system, specifically the U.S. correspondent banking system, to engage in transactions related to the hiring and use of LPG Vessel 1 and LPG Vessel 2 and related expenses.

15.     It was further part of the conspiracy that the conspirators used email to communicate with each other and with the management company about the purchase, operations, and sale of LPG Vessel 1 and LPG Vessel 2, as well as their efforts to conceal their involvement and interest in such transactions.

### Overt Acts

16.     In furtherance of the conspiracy and to effect the objects of the conspiracy, at least one of the co-conspirators performed and caused to be performed one or more of the following overt acts, among others, on or about the dates set forth below, in Iran and elsewhere.

4

a.      On or about January 25, 2017, a conspirator sent an email to the management company, with a copy to two different email accounts used by **MOKHTARI,** regarding a contract between Russell Shipping and another entity for the use of LPG Vessel 1 to load and ship LPG cargo from a port in Iran.

b.      On or about May 30, 2017, **MOKHTARI,** acting as the sole owner of Russell Shipping, sold LPG Vessel 1 to Buyer 1 for approximately \$3.1 million.

c.      On or about May 31, 2017, **MOKHTARI** sent an email with the subject line "Addendum to sell contract" to two conspirators with an attached Addendum to a Memorandum of Agreement between Russell Shipping and Buyer 1, signed by **MOKHTARI,** for the sale of LPG Vessel 1.

d.      On or about June 16, 2017, the conspirators caused a law firm located in the United Kingdom to send a wire in the amount of \$1,339,960.84 to the Mori Construction account ending in 1591 at Bank of America with the notation "Sale of [LPG Vessel 1]."

e.      On or about June 16, 2017, the conspirators caused a law firm located in the United Kingdom to send a wire in the amount of \$1,522,637.28 to the Mori Construction account ending in 4626 at Wells Fargo Bank with the notation "Sale of [LPG Vessel 1]."

18 U.S.C. § 371

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further alleges:

1.      Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), as a result of the defendant's conviction on this Information.

2.      Upon conviction of the offense alleged in this Information, the defendant,

### BEHROUZ MOKHTARI

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense, including but not limited to:

> a.  the real property located at 143 Kennedy Avenue, Campbell, California; and
>
> b.  a money judgment in the amount of approximately $2,862,598.12.

### Substitute Assets

3.      If, as a result of any act or omission by the defendant, any of the property subject to forfeiture, identified above:

> a.      cannot be located upon the exercise of due diligence;
>
> b.      has been transferred or sold to, or deposited with, a third party;
>
> c.      has been placed beyond the jurisdiction of the Court;
>
> d.      has been substantially diminished in value; or
>
> e.      has been commingled with other property which cannot be divided
>         without difficulty,

6

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853,

as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

*Erek L. Barron*

Erek L. Barron
United States Attorney

11/10/2022
Date